JOHN ELMORE, ASSIGNEE, *vs.* R. M. SCURRY AND ANOTHER.

The Supreme Court has no power to set aside the verdict of a jury upon questions of fact, even in a case tried in 1867, and taken, by appeal, to the late Court of Appeals.

Some suggestions in relation to the powers and practice of the Circuit Judge upon motions for new trials in causes which did not originate, nor were tried, in the Circuit Court as now constituted, and in relation to the time within which such motions may be entertained.

BEFORE DAWKINS, J., AT NEWBERRY, SPRING TERM, 1867.

The report of His Honor the presiding Judge is as follows:

"The defendants were sued as sureties of B. F. Payne, on a sealed note, bearing date 18th November, 1862, for $5,300, payable to the administrators of George Long, and by Michael Werts, one of the administrators, assigned to the plaintiff, on the 1st March, 1864.

"The consideration of the note was a family of seven negroes, purchased by Payne, at the sale of the property of the intestate. They were proved to be likely. One witness said "they sold for but little more than they would before the war," and Gen. Kinard said "they sold rather higher." It was not pretended the negroes, or any of them, were unsound. The defence insisted on was a defect of title in consequence of the emancipation of the slaves, and, further, that plaintiff was bound to take payment in Confederate money. Upon the first ground, I ruled and charged that the title to the negroes vested in Payne when the terms of the sale were complied with. That the warranty of title only extended to a paramount one outstanding, and not against the future action of the State, when, from considerations of public policy, it saw proper to emancipate. The loss must fall on the legal owner. In point of fact, however, the negroes had been sold by Payne when he had an undisturbed possession of them. It was proved Payne received Confederate money for them, which is undisposed of. I am unable to perceive in that any reason why the loss should be visited on plaintiff. It was one of the hazards of the times.

"I was not impressed with the other ground. The proof was that the negroes sold for but little more than they would have brought before the war; and, though it may have been expected that it would be paid in the currency of the country, when the note fell due, yet there was no stipulation to that effect. There never was any tender, even of Confederate money, to the holder of the note. Werts, the administrator, said he met Payne and Spearman

in the road, who said they had been to his house to pay, and offered to pay the note. He informed them he had that day assigned the note to plaintiff. This was on the 1st March, 1864, three months after the note fell due. No application afterwards was made to the plaintiff to pay it.

"I thought the plaintiff entitled to recover the amount of the note. The jury thought otherwise, and found for him something over $800, (amount not recollected,) and I doubt, if he succeeds in his motion, whether he will ever do better."

The plaintiff appealed, and now moved this Court for a new trial, upon the grounds:

1. Because the defendants pleaded failure of consideration, relying upon the emancipation of the slaves, for whose purchase money the note sued on in this case was given, to sustain that plea; and because it was in proof that the principal in the note, the purchaser of the slaves, sold them before they were, in fact, emancipated, and was paid for them; they, therefore, should not have been relieved from the payment of any part of the principal and interest on the note.

2. Because the verdict is unsustained by the law and the evidence of the case.

*Baxter*, for appellant.

*Fair*, contra.

May 8, 1869. The opinion of the Court was delivered by

WILLARD, A. J. Plaintiff obtained a verdict for $800 on a sealed note. He claims that the verdict should have been rendered for the amount of the note ($5,300) and interest; but that the jury assumed to reduce his demand in disregard of the instructions of the Judge, who, as it appears, disposed of all questions raised by the defence as matters of law, and instructed the jury accordingly.

No objections to the decisions and rulings of the Judge are brought before us by the grounds of appeal; but we are asked to set aside the verdict on matters of fact. This we have just held, in the case of *Floyd* vs. *Abney*, decided at the present term, we have no authority to do.

It has been suggested at the bar that, as the practice on this subject is unsettled, a statement of the views of this Court, as to the proper mode of proceeding in such cases, will tend

to prevent the evils likely to arise from the absence of a definite rule, fixing the relative jurisdictions of the Supreme and Circuit Courts in this respect. It admits of doubt, whether the decision of a Circuit Judge, granting or refusing a new trial on matters of fact, exclusively, can be reversed in this Court. But no opinion is intended to be expressed at the present time on that point. It is important that the rule governing the exercise of this authority should be uniform throughout the Circuits; and, with a view to promote that end, some of the questions arising out of the circumstances of the present case will be considered.

It is urged that the case was tried before a Judge who is not now in office, and that a motion for a new trial, if made before the present Circuit Court, will be heard by a Judge unacquainted with the facts of the case, as elicited upon the trial. It is also doubted by counsel whether, for that reason, the Judge will deem himself authorized to act in the case.

The power to grant new trials is vested in the Circuit Court, and is neither limited, in terms, to the Judge who tried the case, nor to causes that have originated or been tried in the Court as now constituted. It is an important power of a remedial nature, and ought not to be encumbered with limitations and conditions not, in terms, or by necessary implication, imposed by the legislative authority. The statute must be interpreted as restoring to the Circuit Court what originally belonged to it at common law as a Court of general original jurisdiction, and, therefore, ought to be liberally construed, so as to secure a full administration of justice.

The want of sufficient evidence of what transpired on the trial will be felt less in the present case than in the majority of cases in which new trials will be sought, as it appears from the report of the Judge that the jury had nothing to consider under the ruling but the terms of the note sued upon.

It is suggested that the application may be regarded as not made in due time. In this respect the Circuit Court is at liberty to apply the most liberal rule demanded by the ends of justice. Neither the statute nor any established rule, beyond that which springs from the nature of laches, binds him.

In the present case, it appears that in due time after verdict the plaintiff prosecuted the customary means of setting the verdict aside. It is not clear how he can be charged with a neglect to prosecute his rights with diligence in awaiting the final disposition of his appeal.

If our ability to entertain the present appeal depended upon the hardships of the case, it would still be difficult to see any reason, as the case is presented to us, why relief might not be obtained upon an application to the Circuit Court.

The appeal will be dimissed without prejudice to any application that may be made to the Circuit Court to set the verdict aside.

*Moses*, C. J., concurred.